May Term,
1860.

CONWELL
V.
HILL.

CONWELL, PRESIDENT OF THE BANK OF CONNERSVILLE, *v.*
HILL.

The issuing of a note by a bank organized under the general banking law of 1852, and the receiving of it by the holder as money, is, in effect, a contract between the holder and the bank that the latter will pay it on demand; and upon the refusal of the bank to do so, it may be sued by the holder.

Section 8 of that act confers no power upon the auditor—the trust funds having been exhausted—to sue the bank for a balance due the note-holder.

The measures to be adopted by the auditor to prevent loss to note-holders, relate solely to the management of the stocks transferred to him by the bank.

The note-holder may sue the bank without in the first instance filing certificates of protest with the auditor—the stocks in the hands of the latter being merely collateral security.

There is nothing in the act requiring the auditor to delay the payment of such protested notes until all the notes issued by the bank have been deposited in his office.

In a suit against the bank, upon a failure to pay on demand, the notes, or a copy of them, should be filed with the complaint; and the fact that they are deposited in the auditor's office, does not excuse a failure to file them or a copy.

*It seems,* that the filing of one note, or a copy of it, of each denomination, with an averment that there were other notes, enumerating them, of like denomination, would be sufficient.

APPEAL from the *Fayette* Circuit Court.

Tuesday,
May 29.

DAVISON, J.—The appellee, who was the plaintiff, brought three several actions in said Court against *Conwell*, as president of the *Bank of Connersville.* These actions were, at the *March* term, 1856, of that Court, consolidated, and, as one suit, proceeded to trial and final judgment.

The complaints allege substantially these facts: The *Bank of Connersville* was organized and went into operation under and by virtue of an act entitled "an act to authorize the business of general banking," approved *May* 28, 1852; and the plaintiff, being the holder and owner of the circulating notes of said bank to the aggregate amount of 11,344 dollars, on the —— day of ———, in the year 1855, presented the same at her place of business for redemption and payment, which was then and there refused; whereupon he caused said notes to be protested for non-payment. A copy of the original certificate of protest was

filed with the complaint, and made a part thereof. After this, on the 21st of *November*, 1855, the auditor of state, having converted the stocks and securities deposited in his office by the bank into money, the same was found insufficient to fully pay the notes issued by her, and remaining unredeemed; and having apportioned such proceeds, in the proportion they bore to the circulating notes of the bank, he ascertained that the same amounted to, and would only pay, 87 per cent. on such outstanding notes. It is averred that the plaintiff, on the last-named day, deposited and filed all the circulating notes so held and owned by him, with the auditor, in his office, and received from him the dividend of 87 per cent. on the above 11,344 dollars, and also his certificate that the notes had been deposited and the dividend paid. A copy of this certificate was filed with the complaint and made a part of it. After the payment of the dividend, there remained unpaid 13 per cent. of the aggregate amount of said notes, amounting to 1,474 dollars, for the recovery of which this suit was instituted.

Defendant demurred to the complaint, but his demurrer was overruled, and thereupon he answered. His answer contains a general denial, and seven special defenses. Demurrers were sustained to all the special defenses, excepting the sixth, to which there was a reply by a general denial.

The Court tried the issues and found for the plaintiff 1,474 dollars, and, having refused a new trial, rendered judgment, &c.

In support of the demurrer to the complaint, it is argued that the act under which the bank was organized does not contemplate the proceeding instituted in this case in the Circuit Court; but intends, in case of a bank failure, and a deficiency of funds from the sale of the securities held by the state to redeem her circulating notes in full, that other steps necessary to recover of the bank the balance due the note-holders should be taken by the state auditor. This position is, in our opinion, untenable. The issuing of the note and the receiving of it by the holder as money is, in effect, a contract between him and the bank that she

May Term,
1860.

CONWELL
v.
HILL.

will pay it on demand; and upon her refusal to do so, she is plainly liable to be sued by the holder of the note. Indeed, the act itself provides that all persons having demands against such banking association may maintain actions against the president thereof, and all judgments against such president for any debt or liability of the association, shall be enforced against its joint property. 1 R. S. pp. 157, 158, §§ 23, 24. The failure to pay a circulating note when properly demanded, evidently creates a debt against the bank for which she is liable in a suit by the note-holder.

But we are referred to § 8 of the same act, as sustaining the position assumed in favor of the demurrer. That section provides, in effect, that in case the makers of any such circulating notes shall, at any time, on lawful demand, fail to redeem such note, the holder thereof may cause the same to be protested for non-payment. And the auditor, on receiving and filing in his office such protest, shall forthwith give notice to the makers to pay the same; and if they shall omit to do so for thirty days after such notice, he shall immediately give notice in a newspaper published at *Indianapolis*, that all the circulating notes issued by such banking association, will be redeemed out of the stocks held by him for that purpose; and it shall be lawful for the auditor to apply the trust funds belonging to the makers of such protested notes, to the payment of such notes, with costs of protest, and to adopt such measures for the payment of all the circulating notes put in circulation by the makers of such protested notes, as will, in his opinion, most effectually prevent loss to the holders thereof. 1 R. S. p. 154. This provision, the trust funds having been exhausted, confers no power on the auditor to sue the bank for a balance due the note-holder. He is, it is true, required to adopt such measures as will, in his opinion, most effectually prevent loss to the holders of the notes; but these measures must be such as are consistent with his duties as prescribed by the act, and must relate to the management of the stocks transferred to him by the bank.

The result is, the plaintiff has not, in this case, misconceived his remedy. Indeed, he might have sued the bank upon her direct engagements to pay the notes on demand, without in the first instance having filed with the auditor the certificates of protest; because the stocks of the bank are in his hands as mere collateral securities that she will redeem her circulating notes; hence, the note-holder may, at his option, sue the bank, or resort for payment to the trust funds in the hands of the auditor.

But it is said the complaint fails to allege a final dividend of the proceeds of the stock to all the note-holders, and is therefore defective. It does allege that the auditor having apportioned such proceeds, in the proportion they bore to the circulating notes of the bank, ascertained that the same amounted to and would pay only 87 per cent. on such notes, and that the plaintiff, on the notes which he deposited with the auditor, received of him the same per cent. These allegations seem to be sufficient. The auditor having apportioned the funds as alleged in the complaint, we think it became his duty to pay on the protested notes the portion to which they were entitled. There is, indeed, nothing in the letter or spirit of the act that required the auditor to delay payment on the plaintiff's demand until all the notes issued by the bank had been deposited in his office. At all events, the question whether the auditor has or has not done his duty in the application of the trust funds, cannot properly arise in this case. It is enough to sustain the purpose of the present suit, if the plaintiff has shown the amount paid on the notes which he deposited in the auditor's office.

As another ground of demurrer, it is assumed that the notes, or copies of them, should have been filed with the complaint. The code says the complaint shall contain a statement of the facts constituting the cause of action, in plain, concise language; and "when any pleading is founded on a written instrument, or on account, the original, or a copy thereof, must be filed with the pleading." 2 R. S. pp. 37, 38, 44, §§ 49, 78. In view of these rules of prac-

tice, we have decided that the instrument sued on must be set forth in the complaint according to its legal effect, and in addition, the original instrument, or a copy of it, must be filed with that pleading; otherwise, it will be held objectionable, on the ground that "it does not contain facts sufficient to constitute a cause of action." *Price* v. *The Grand Rapids, &c., Railroad Co.*, 13 Ind. R. 58. Here the notes are evidently the basis of the action, because they alone contain the defendant's engagements to pay on demand; hence, there seems to be no valid reason why they, or copies of them, should not, in this action, as in a suit on an ordinary promise in writing, be filed with the pleading. Nor does the fact that the notes were deposited in the auditor's office excuse the defect in the pleading; because it is within the range of probability that copies of the notes could have been easily procured. Perhaps the filing of one note, or a copy of it, of each denomination, with an averment that there were other notes, enumerating them, of the same denomination, would have been sufficient. The last alleged cause of demurrer is well taken.

Various questions relative to the special defenses to which demurrers were sustained, are raised by the appellant; but the questions thus raised are, in effect, the same as those which have been disposed of, and will not, therefore, be further noticed.

We perceive no error in the record, save that which relates to the failure to file with the complaint the notes sued on, or copies of them. For that error the judgment must be reversed.

*Per Curiam.*— The judgment is reversed with costs. Cause remanded, &c.

*J. A. Fay* and *N. Trusler*, for the appellant.

*J. S. Reid*, for the appellee.